Kirkpatrick, C. J.
— This is an action of slander.
The defendant pleaded not guilty; and gave a notice of particulars, in order to let in the special case. This notice, however, is so unskillfully drawn, that all benefit under it was waived at the trial, by the defendant’s counsel, and I think rightly so. The cause, therefore, stood simply upon the plea of not guilty.
The defendant, under this plea, at the trial offered several matters in evidence, which were overruled by the court; and a bill of exceptions was thereupon taken, and upon error, brought in this court. The question is now upon the matter contained in that bill.
[*] The substance of the objections to the proceedings of the court below, drawn from this bill, is,
1st. That they overruled evidence offered by the defendant below, to prove that he only repeated what had been said by others. And,
2d. That they admitted evidence of what passed before a certain Presbytery of the church, in part, against the defendant; but overruled evidence of what passed in the same church judicatory, in his favor.
As to the last of these, it does not seem to me to be grounded in the record. It is true, that some of the witnesses detailed certain things which happened before the church judicatory; but there was no objection raised to this by the defendant below. As soon as exception is taken to the detailing of the proceedings, then the court overrule it, and I think rightly.
The cause will turn, therefore, according to my view of it, upon the single question, whether upon not guilty in an *163 action for words, the defendant can give in evidence, either in verification of the plea, or in mitigation of damages, that he only repeated a current report, or that certain other persons had publicly declared the same thing.
And upon this question, the resolution of the court in Northampton’s case, 12 Coke 134, seems to me to have laid down the principle, which lias been followed ever since.
In one view of the subject, this may appear to be a rigid rule, that he who repeats shall be subject to the same damages as he who invents and propagates a malicious slander; yet when it- is considered, that the action is not for the punishment of the slanderer, but for the remuneration of the injured, I think it will change its aspect. If A. utters to the world a slander, which deprives me of my good name and reputation, [129] and even of the means of obtaining a livelihood, does it at all make up my loss to tell me, he had the story from others ? I think not. Be the reason of the rule, however, [*] as it may, as far as I have had opportunity to trace the course of decisions upon the question, they seem to me uniformly to have recognized this principle, that on not guilty, in actions for ivords, common fame cannot be given in evidence. I believe there is wisdom in the rule; and if it W'ere otherwise, I cannot change it.
I am of opinion, therefore, that the judgment be affirmed.
Rossell, J.
— It is assigned for error in this cause, that the Court of Common Pleas for the county of Somerset, admitted illegal, and refused to admit legal testimony. On the fullest consideration of the subject I have been able to give it, I am of opinion, that no evidence was admitted by the court belovq but what is warranted by law in suits of this nature.
1st. On the refusal of testimony by the court, it is alleged that the defendant offered to prove the truth of the words charged in the declaration, which testimony was overruled. I take it to be indisputable law, ever since the decision of *164 the court in the case of Underwood v. Sparks, as laid down by Chief Justice Lee, in Strange, 1200, that the truth of the words in actions of slander, shall not be given in evidence on a plea of not guilty.
2d. The defendant offered to prove by A. Cave, that she had informed Esquire D’Groat of the facts proved; and that this was the cause of the meeting of the Presbytery— which was overruled.
3d. That the defendant below, offered to prove the confession of the plaintiff himself, “ that those reports were in existence, and that they originated in the family of the said David Barkley.” This was also overruled.
In support of all these decisions of the Court of Common Pleas, it has been urged by the counsel for Mr. Barkley, that the action was not brought for words spoken as a report, but as a fact; that the defendant, [*] at the time of speaking the words, should have given his author, or he is precluded from doing so afterwards: that every person is answerable for the slander he reports of another; and that common fame of the truth of the report, shall not be inquired into— for it might have originated with the defendant — and he would, in that case, be permitted to shelter himself under his own guilt, and cunning, and avoid the punishment he justly deserved. In confirmation of these ideas, 5 Comyn, 505; Sayer’s Reports, 266; and 12 Coke, [130] 134, have been cited. The reference to Comyn, is under title Pleader, and the author, in giving directions on that head, says : “ So it is no plea that the plaintiff was not of good fame, or that there was a common fame that he was guilty.” But I confess I cannot understand this authority as precluding the defendant from giving in evidence circumstances to palliate his offense, and in mitigation of damages.
As much of the case cited from Coke, as is applicable to •the present, is briefly this: The Attorney General informed against six persons therein named, for “ speaking and pub *165 lishing divers false and horrible scandals against the Earl of Northampton.” At the hearing of this cause, eleven judges were present; and it was then resolved, “ that in a private action for slander of a common person. — If J. S. published generally, without a certain author, that J. G. was a traitor or a thief, an action sur le case lieth against him; for that he hath not given to the party grieved, any cause of action against any but himself, who published the words.”
For the publication of the scandal aforesaid, all the defendants in this cause were punished by fine and imprisonment. But Goodrick and Ingram (two of the six), were, fined the most, for that Goodrick had no authority for the words concerning the Cinque ports; nor could Ingram find any authority to vouch that he had heard them; therefore, it was taken as a fiction of his own.
[*] This authority then, both in reason and in fact, makes directly against the decision of the Court of Common Pleas. Four of the defendants were permitted to show that they had heard from others the reports they circulated; and although this was not in the opinion of any of the eleven judges, a complete justification; it was considered by them as a 'mitigation of the offense; and they, therefore, were not punished so severely as Goodrick and Ingram, who could make no such proof, and who were supposed to have raised the report themselves.
In the case now before us, the defendant below did, in his conversation (as stated in the declaration, with Jeremiah Fisher, the principal witness on the part of the plaintiff) give Howell’s Boys as his authority, and in support of his allegations. Robert Hughes, another witness, also states, that at the conversation alluded to by Fisher, he was present, and that the defendant said a man told him he would swear he had seen the plaintiff by the board fence, &e., and thinks he mentioned Mr. Bush. The defendant is not, therefore, strictly within the reason of the rule laid *166 down in Northampton’s [131] case — more especially if he could make it appear that the plaintiff knew those reports were in circulation, and the person with whom they originated.
But he is completely within the rule of distinction by which the judges were guided: — That if he could prove he was not the original publisher of the scandal for which he was prosecuted, his offense and consequently his punishment would be lessened.
In Butler’s Nisi Prius, page 9, it is stated in the case of Smith v. Richardson, that upon a plea of not guilty, the defendant may give in evidence, the manner and occasion of speaking the words, in mitigation; so he may give in evidence a confession of the plaintiff, that he was an accessory.
[*] For (says the authority) he could not plead this in bar. Here then, the general rule appears to be, that if the defendant is in possession of any facts which could be properly pleaded in bar, he shall set them forth in his pleadings; that the plaintiff may be enabled to give contrary proof, or to reply several things of which he would lose the benefit, on the general issue. But where any circumstances attend the slander, which go to lessen the degree of malice supposed to have actuated the defendant in the propagation of it; but which do not amount to a complete justification — and cannot, therefore, be pleaded in bar; he is allowed to give them in evidence on the general issue, in mitigation, or otherwise, he would lose all the benefits which ought to arise from any extenuating circumstances.
It cannot be contended, that it would have been a plea in bar to the present action, for the defendant to have proved that he had heard from another the scandal he had imported —for in the book last cited, page 10 ; in an action brought by a master of a ship against a merchant, for saying his vessel was seized, and he put in prison, for running corn, it was held by Lord Chief Justice Lee, that the proof of the defendant’s having heard it read out of a letter, was no justi *167 fication; but that every person Ayas ansAverable for the slander he reported, but he inight, according to the rule above stated, and probably did (I say probably, for avc have not the whole ease) give it in mitigation.
The gist of an action of slander, for words in themselves actionable, is the malice which produced them; take away this, and the suit is not sustainable in any shape. It rationally folloAArs then, that as there are degrees of malice, the punishment inflicted on the slanderer should be in just proportion to the degree proved; and as it is always allowed, in actions of this nature, for the plaintiff to give in evidence that the slander was repeated, to sIioav it Avas malicious — and also that the defendant had used other expressions of ill [*] [132] Will: — should not the defendant then, on every principle of justice, be permitted, if he can, to lessen the appearance of malice thus raised up: and to prove that although he had heard, and reported slanders he was unable to justify —yet of the principal and additional guilt of having invented them, he Ayas entirely innocent.
Great inconvenience might arise from a contrary doctrine.
An unprincipled man might cause scandalous reports, yet untrue, to be circulated respecting himself; and on a prosecution for repeating them, should the defendant be precluded from giving in evidence, that he heard them from others, or that they originated Avith the friend, or in the family of the plaintiff, in mitigation — -the villainy of the plaintiff Avould be completely successful in a verdict for damages.
To shoAV that the defendant, in the cause before us Avas actuated by malice and ill avíII, other conversations than those laid in the declaration, yyere permitted to be given in evidence on the part of the plaintiff, viz.; those with John Harriot and Nancy Seabring, I am then, clearly of opinion, that defendant, before a tribunal not limited in the damages they might find against him, but by the sum named by the prosecutor, had a legal right to shoAV the circumstances under *168 which the words were spoken, and to exculpate himself in the view of his country, from the suspicion of having invented so scandalous a tale. He could not do this more effectually, than by proving they originated in the family of the plaintiff. The court below, refused to hear this testimony on this head; and in so doing I conceive their decision was unlawful. Therefore, let the judgment be reversed.
Pennington, J.
— The question for the determination of this court is, whether the Common Pleas of Somerset, did not commit error in rejecting testimony offered by the plaintiff in error, the defendant below. The declaration charged the defendant below, with maliciously [*] publishing certain slanderous words of the plaintiff, relative to an adulterous intercourse with a certain Mrs. Cain. The defendant pleads to all the counts in the declaration, the general issue. On ■the trial, it appeared, that certain reports had been in circulation in the congregation, relative to the conduct of the plaintiff (who was the minister) in respect to Mrs. Cain; that the defendant was one of the congregation; that the sessions of the church had been convened on the occasion, and an inquiry had been set on foot; that three weeks after the meeting of the sessions, Jeremiah Fisher, a witness on the part of the plaintiff, and the only one that proved any of the words contained in the declaration, swore that he met the [133] defendant, Dr. Cook, at a hatter’s shop, when a conversation took place on the subject, and that the defendant said, that it was now said, that the plaintiff below had been catched in the fact of being with Mrs. Cain at the board fence. The witness asking how it could be proved ? — that the defendant answered, by Howell’s boys. The same witness testifies to two facts that go to show doubts as to his correctness, in respect to the positive asseveration of the defendant ; for he immediately says, that the defendant observed, that it was a scandalous thing for a minister if true. The *169 introductory words, it loas now said, go to the same point. A witness present at the same conversation, says, that the defendant spoke of it as what he had heard; other witnesses were called, who testified that the first witness, Fisher, had said at other times that the defendant did not speak positively, but that it was so said and reported.
The defendant then offered to prove by a witness, that it was so said and reported by other persons, before the words .spoken by him; and that witnesses had been examined before the Presbytery, who had sworn to the facts; and that the plaintiff himself had acknowledged there was such a report in circulation, and that it originated in his own family. So far, at least as the testimony went to show, that there was such a report [*] in circulation, and that the story originated in the family of the plaintiff, I think the court erred in not receiving the testimony. The quo animo with which the words spoken, was the point in issue, as malice constitutes the gist of the action. It appears to me, that the testimony was proper, to show with what temper of mind, the defendant spoke the words: whether from a malicious design to injure the plaintiff, or from a laudable motive to preserve the purity of character, so essentially requisite in a person exercising the functions of the plaintiff; or from mere inadvertency; or even if it should appear to the jury, that the defendant had pursued the inquiry with so much zeal as to indicate an evil intent, yet if it should appear that he did not give rise to the slander, but only repeated what he heard from others, giving credit to it as coming from the plaintiff’s own family, and the more especially if it should be found that this was done in the course of prosecuting the plaintiff before the sessions or Presbytery, it certainly might and ought to go in mitigation of damages.
I am aware that I am treading on what some may think, questionable ground; that there are some dicta in the books, *170 and opinions out of them, that look another way. This, however, ought not to deter me from [134] the investigation of a subject of vast importance to society, as it -affects in a delicate point, the public justice of the country.
It is no doubt a rule of law, that what may be pleaded in justification, cannot be given in evidence on the general issue of not guilty; that a defendant shall not indirectly, and by surprise set up a defense, which he might and ought to have apprised his adversary of by plea. This is founded on the nicety of special pleading, contrived to narrow the matter in controversy to a single and simple point; but it is confined to those cases where the matter offered in evidence, would of itself be a justification, and might be pleaded; and not where it is merely evidence of a fact, which, if true, [*] only goes to show that the defendant was not guilty, or in -mitigation of damages.
Supposing one of my neighbors, for instance, the parson of the parish, shall call, at my house, and very gravely inform me, that one of our neighbors had been found out and fully detected in the commission of some scandalous offense, and detail the circumstances, both of the commission of the offense, and of the detection; that other persons, of good credit, were to drop in and relate the same story, so that I should fully believe, that the facts were not only true, but that they were public; and that, in conversation afterwards with some other person, I was to mention that there was such a report in circulation, without thiiiking it necessary to name the persons from whom I had it, and it should turn out afterwards to be a mistake, that it was another person resembling the one spoken of in name, or in other circumstances, which had led to the error; if the party should think proper to bring an action against me, I could not plead that I had it from other persons, and that it was general report in the neighborhood, but I must plead the general issue, that I was not guilty of *171 a malicious slander; reason and justice, however, would say, that I might give in evidence, the whole transaction, the manner and occasion of speaking the words, that if it would not wholly excuse me, it might at least go in extenuation of the injury; and I have not been able to discover any adjudicated case to the contrary. The dictum cited from Com. Dig. goes no farther than to prohibit this matter from being pleaded in bar to the action. The saying of the judges, in Northampton’s case, 12 Coke, which the reporter calls a resolve, goes no farther; it only says, that in such case, an action on the case may be maintained; that is, its having been reported by others, cannot be pleaded in bar; the reason I apprehend to be, that although a person reporting what he hath heard from another, may do it from laudable motives, or innocent views, yet he may also [135] do it from vile and bad motives; he may not believe the report [*] himself, and yet circulate it from malicious view; and this is a proper subject for the consideration and determination of the jury. Northampton’s case, before mentioned, ami which was cited by the counsel for the plaintiff below, in part recognizes this distinction; and as this is considered a leading case on this subject, it merits some attention. It is proper to observe, that this is a star-chamber case: the proceeding in which was not by the rules and course of the common law; the case was a criminal one in favor, as the case states, of one of the grandees and peers of the realm, a principal officer of state, high in the confidence of the king, the information ore terms, and the examination summary, and by interrogatories put to the persons accused. In fact, there were no pleadings; a jury never set foot in this chamber. One Goodrich was charged by the attorney-general, with publishing certain horrible lies of the Earl of Northampton; Goodrich being examined, acknowledged speaking the words charged against him; but alleged, by way of excuse, that he had them from *172 one Cox. Even this high prerogative court, did not tell him it is of no importance from whom you had the report, you are the slanderer, and must take the whole on yourself; but they examined Cox, who acknowledged that he told Goodrich some part of what he reported; and that be had that part from one Lake; who, being examined, said he had it from another; and in this way, this court traced it through several persons to one Ingram; who said he had it from some English fugitives in foreign parts. This was considered as a fiction, and he found to be the author. It is true, the court punished all these persons; but they made a distinction betweeen Goodrich, who gave no author for part of what he said, and Ingram who could not give a satisfactory one. for the remainder, and the intermediate persons through whose hands the report had passed, whom they punished less.
This certainly went in mitigation; they were not punished as principals; and it is also to be recollected, that they did not relate it as a report, but as a fact. I cannot, therefore, see [*] anything in this case, that impeaches the doctrine which I have here advanced. All the circumstances connected with the words, should go fully and fairly to the jury, who must judge from them of the guilt or innocence of the defendant;[1] and in case they find him blamable, to assess such damages as the more or less aggravated circumstances of the case will justify. Justice and reason call for this [136] rule; and the law, as I apprehend, does not deny it; nor can I perceive what inconvenience can result from it. An intéllígent court will always instruct the jury in what light to apply the testimony; distinguishing between that which goes to the point in issue, and that which goes in mitigation, or aggravation. Is it not as reasonable to mitigate as to aggravate ? Our law does not delight in exposing the dark side of the human character; it seeks truth; it is not vin *173 diotive; it is merely just. It is too dignified and enlightened, to put on the same footing the vile inventor, fabricator, and publisher of a malignant slander, and him who inadvertently repeats what is already in circulation.
I am, therefore, of opinion, that the judgment be reversed.
Judgment reversed.
Cited in Sayre v Sayre, 1 Dutch. 235.

 Sic. 1 Bin. 35.